UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 10-21070-Civ-COOKE/TURNOFF
(06-20457-Cr-COOKE)

JOSE PEDRON,

    Petitioner,

vs.

UNITED STATES OF AMERICA,

    Respondent.

_____/

## ORDER DENYING MOTION TO VACATE SENTENCE

THIS MATTER is before me upon Jose Pedron's Motion to Vacate Sentence (ECF No. 1). Pedron requests that I vacate his sentence pursuant to 28 U.S.C. § 2255. On February 28, 2007, I sentenced Pedron to 175 months imprisonment in *United States v. Pedron*, Case No. 06-cr-20457-MGC (S.D. Fla.). I have reviewed the parties' arguments, the record, and the relevant legal authorities. For the reasons set forth below, the Motion is denied.

### I. INTRODUCTION

The facts are set forth in the parties' respective papers. (ECF Nos. 3, 12).[1] On July 6, 2006, Eli Sleiman, Pedron's neighbor, approached the Drug Enforcement Administration ("DEA"), and offered to work as a confidential informant[2] in uncovering Pedron's narcotics transactions. During the next few weeks, Sleiman made several phone calls to Pedron to set up a

---

[1] Citations to the record in this action will appear as "ECF No. __." Citations to the record in the underlying criminal case will appear as "Case No. 06-20457, ECF No. __."

[2] The confidential informant's name is spelled differently in various court documents. In Pedron's Motion to Vacate, the informant's name is spelled "Eli Sleiman." However, the United States spells the informant's name as "Eli Sleyman." Here, I will use the "Sleiman" spelling, as it is the spelling used in the initial motion.

narcotics deal. The DEA recorded these phone calls.

On July 14, 2006, the DEA agents, with Sleiman's assistance, set up a meeting with Pedron at the Dadeland Mall under the belief that he would appear with a large quantity of cocaine and amphetamines. Pedron did not show up, and the agents terminated the operation. Later that evening, Sleiman contacted DEA agents and delivered a bag containing one kilogram of cocaine and two thousand amphetamine pills, which Sleiman claimed to have found on the fence in between his property and Pedron's house. Prior to the meeting that night, the DEA agents found Sleiman to be in possession of a coin purse that contained cocaine.

On July 17, 2006, Sleiman arranged another meeting with Pedron at an International House of Pancakes restaurant. Agents arrested Pedron when he arrived. The DEA agents discovered a small quantity of cocaine in Pedron's pocket, along with approximately four thousand amphetamine tablets in a briefcase his truck. The DEA agents also discovered Pedron's driver's license and Social Security card in the briefcase.

On July 27, 2006, a grand jury in Miami indicted Pedron on five counts for the events that occurred between July 9, 2006, and July 17, 2006. (Case No. 06-20467, ECF No. 7). The Indictment charged Pedron with: Count I for conspiracy to possess with the intent to distribute more than five hundred grams of cocaine and MDMA ("ecstacy"); Count II for the substantive offense of possession with the intent to distribute in excess of five hundred grams of cocaine on July 14, 2006; Count III for the substantive offense of possession with the intent to distribute amphetamines on July 14, 2006; Count IV for the substantive offense of possession with the intent to distribute amphetamines on July 17, 2006; and Count V for simple possession of cocaine in violation of 21 U.S.C. § 844(a) on July 17, 2006. Upon the government's motion, the Court dismissed Count I of the indictment. (Case No. 06-20467, ECF No. 27). Pedron pleaded

not guilty to the remaining counts and proceeded to trial.  (Case No. 06-20467, ECF No. 8).

On December 4, 2006, the jury found Pedron guilty of Counts II through V of the indictment.  (Case No. 06-20467, ECF No. 35).  On February 28, 2007, I sentenced Pedron to 175 months in prison.  (Case No. 06-20467, ECF No. 47).  Pedron subsequently filed a timely notice of appeal on March 8, 2007.  (Case No. 06-20467, ECF No. 48).  On May 30, 2008, the United States Court of Appeals for the Eleventh Circuit issued a *per curiam* opinion affirming his conviction, and issued a Mandate on July 1, 2008.  (Case No. 06-20467, ECF No. 70).  Pedron has been in prison since the date of his arrest and is currently serving his sentence at the Federal Correctional Institution at Miami, Florida.

On April 5, 2010, Pedron filed the instant Motion to Vacate pursuant to 28 U.S.C. § 2255.  (ECF No. 12).  In response to the motion, the United States attached an affidavit provided by Frederick S. Robbins, Pedron's counsel in the underlying criminal case.  In his affidavit, Robbins testifies as to his recollection of his role as Pedron's counsel during the criminal case. *Id.*

## II. BRIEF SUMMARY OF CLAIMS

Petitioner seeks to vacate his conviction on three claims of ineffective assistance of counsel which have been summarized as follows:

Claim I:  Trial counsel was ineffective in failing to subpoena Sleiman, the Confidential Informant, to testify at trial;

Claim II:  Trial counsel was ineffective in failing to correctly subpoena a letter carrier and postal inspector to testify at trial;

Claim III:  Trial counsel was ineffective by improperly advising Pedron to testify in his own defense, by failing to advise him that he had the option of not testifying, and by failing to

3

advise him of the implications of not testifying.

### III. JURISDICTION

Under 28 U.S.C. § 2255, federal prisoners are given a one-year limitation period from the time the judgment and conviction become final, in order to seek federal habeas review. 28 U.S.C. § 2255(f). In the instant case, the United States Supreme Court denied certiorari on April 6, 2009, and Pedron filed his Motion to Vacate Sentence on April 5, 2010. Thus, Pedron timely filed the motion within the one-year limitation period.

### IV. LEGAL STANDARDS

"A petitioner bears the burden of establishing his right to federal habeas relief." *Coloma v. Holder*, 445 F.3d 1282, 1284 (11th Cir. 2006). In general, a petitioner may only challenge a criminal conviction after attempting advancement on all direct appeals. *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).

A petitioner who is a prisoner in custody under sentence of a court is entitled to relief under § 2225 if the court imposed a sentence that: (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255. In order to prevail on a § 2225 motion alleging constitutional error, the petitioner must show that there was a fundamental constitutional error that had a "substantial and injurious" effect on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Pedron seeks relief under § 2225 claiming ineffective assistance of counsel under the Sixth Amendment. The Sixth Amendment entitles criminal defendants to the effective assistance of counsel—"that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 130 S. Ct. 13, 16

4

(2009) (internal quotation marks omitted).  To prevail on such claims, Pedron must meet the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Pedron must demonstrate (i) that counsel's performance was deficient, and (ii) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.  *Id*. at 687.

To establish the first prong, Pedron must show that "his counsel's conduct was objectively unreasonable in light of professional norms prevailing at the time."  *Lott v. Att'y Gen., Fla.*, 594 F.3d 1296, 1301 (11th Cir. 2010) (citing *Bobby*, 130 S. Ct. at 16).  When examining counsel's performance, judicial scrutiny must be highly deferential to counsel and every effort should be made to reduce the "distorting effects of hindsight."  *Strickland*, 446 U.S. at 689.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.*  To establish the second prong, Pedron must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.

**A. Claim I: Counsel was not Ineffective in not Calling the Confidential Informant as a Witness**

Pedron claims that his trial counsel was ineffective in failing to subpoena the informant, Eli Sleiman, to testify at trial as a witness.  "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978).  "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision" that the court will seldom, if ever, second-guess. *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004).  To show that his counsel's conduct

was unreasonable, Pedron must demonstrate that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000).

Pedron's trial counsel testified that he did not call the confidential information because "[he] did not believe it would help . . . win the case." (Robbins Decl. ¶ 2, ECF No. 12-4). He testified that, after consulting with Pedron, he determine that "the confidential informant would not help [them] and would probably give a lot damaging evidence and [they] would be better off not having him testify" on Pedron's behalf. The trial lawyer reasonably could have concluded that Sleiman's testimony would harm Pedron's case more than it would help, since Sleiman tied Pedron to the drugs at issue. Indeed, Pedron fails to show that Sleiman's testimony "would have been anything but inculpatory" towards him. *See Bush v. Richards*, No. 10-C-66, 2011 WL 553912, at *9 (E.D. Wis. Feb. 11, 2007) (finding that counsel was not ineffective for failing to call confidential information as a witness ). Pedron thus fails to show that no competent counsel would have taken this action. *See Chandler*, 218 F.3d at 1321 (noting that counsel may reasonable conclude that testimony would be "counterproductive" and may "provoke hurtful cross-examination and rebuttal witnesses").

Even if he had established that counsel's performance was deficient, Pedron fails to show he was prejudiced by the deficient performance, i.e., that there is reasonable probability that, but for counsel's deficient performance, the outcome of the trial would have been different. Pedron states that Sleiman's testimony would have shown he planted the drugs at issue in his case to get control of Pedron's home and equity. The record reveals that counsel was able to show this fact through the testimony of other witnesses. Pedron's wife's aunt testified she gave $160,000 to Sleiman so he could purchase a home on Pedron's and his wife's behalf because they had poor

6

credit. (Trial Tr. 116-19, Nov. 30, 2006, ECF No. 12-2). Pedron's wife testified that she and Pedron made the mortgage payments, but that Sleiman never showed up to meetings to deed the residence to them. (Trial Tr. 124-30, Nov. 30, 2006). She also testified that she stopped receiving her mail. (Trial Tr. 135-36, Nov. 30, 2006). She then learned that Sleiman had sold her home to another person and she was evicted. (Trial Tr. 138-142, Nov. 30, 2006). Pedron testified as to the arrangement with Sleiman to purchase the residence, and as to Sleiman's drug use. (Trial Tr. 6-9, 21, Dec. 1, 2006). Despite this evidence, a jury found Pedron guilty.

Pedron does not meet his burden to show that, had his counsel elicited testimony from Sleiman himself about the home-purchase arrangement and his use of drugs, a jury would not have found him guilty. In short, Pedron fails to meet his burden of showing that counsel was ineffective as to this claim.

### B. Claim II: Counsel Was Not Ineffective With Regards to Subpoenaed Witnesses Who Did Not Appear at Trial

Pedron argues that his trial counsel was ineffective by failing to properly subpoena a letter carrier and postal inspector to testify as defense witnesses at trial. These witnesses did not respond to the subpoenas, and Pedron contends that counsel was ineffective for failing to follow federal regulations regarding the subpoenaing of these witnesses. Pedron further contends that the witnesses would have shown that Sleiman was "seeking to interfere with the Pedron's enjoyment of the residence" by rerouting their mail to his address in violation of postal regulations. (ECF No. 3).

As noted above, Pedron must show that trial counsel's conduct was objectively unreasonable in light of professional norms. Although Pedron states that counsel failed to follow "the CFR's [sic] to subpoena two essential defense witnesses," he does not cite which title or section of the CFR counsel purportedly failed to follow. Thus, Pedron fails to satisfy his burden

7

of showing exactly how or why counsel's conduct fell below professional norms.

Even assuming that counsel's conduct fell below professional norms in attempting to serve these witnesses, Pedron fails to show that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. Had the postal employees testified at trial, their testimonies would have been duplicative of other testimony by Pedron's wife regarding problems with receiving her mail and the sale of her home to another person. Defense counsel also addressed in his closing argument the fact that Sleiman changed the Pedron's mailing address and tried to sell the house. (Trial Tr. 111-13, Dec. 1, 2006, ECF No. 12-3).

Pedron does not establish that there is a reasonable probability that the postal workers' testimonies would have resulted in a different outcome at trial, especially given the substantial evidence at trial linking Pedron to the drugs at issue, as discussed below. This claim therefore fails under *Strickland*.

### C. Claim III: Counsel was not Ineffective regarding the Defendant's Decision to Testify

Lastly, Pedron claims that trial counsel was ineffective in failing to advise him that the decision to testify was his alone. Pedron states that counsel told him that "he had 'no chance' unless he testified in his own defense." (ECF No. 3, at 14). Pedron claims that he "testified no[t] of his own free will but upon total and absolute reliance of counsel." (*Id.*) Pedron states that trial counsel did not tell him (i) that the decision of whether to testify was his alone, (ii) that, if he testified, evidence of his prior criminal record would be admissible, or (iii) that, if he did not testify, the jury would be instructed that they could not consider his failure to testify in any way. (*Id.* at 15).

A criminal defendant has a fundamental constitutional right to testify at trial on his own

behalf. *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (emphasis omitted). "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." *Id.* at 1533. If counsel fails to inform the defendant of his right to testify, counsel has "neglected the vital professional responsibility of ensuring the defendant's right to testify." *Id.* at 1534.

There is a factual dispute as to whether counsel did, in fact, advise Pedron that the decision whether to testify or not was his alone.[3] Pedron claims that he was not advised of this right, while counsel testified that he was "sure that [they] discussed whether or not [Pedron] should testify and reached a mutual decision." (Robbins Decl. ¶ 4). Counsel also testified that he always gives his clients an opinion as to whether he thinks it would be helpful for him or her to testify. (*Id*.) I will assume for purposes of this analysis that counsel did not properly inform Pedron that the decision of whether or not to testify was his alone.

Even assuming trial counsel's performance was deficient, I find that Pedron has failed to establish the second prong of the *Strickland* test—that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the trial would have been different. First, Pedron does not state that, had he been properly informed regarding his right not to testify, he would not have testified. The absence of any evidence, or even allegation, that he would not have testified had counsel properly advised him, undermines any claim of prejudice here.

Additionally, Pedron does not show that, had he declined to testify, there is a reasonable probability that he would not have been found guilty of Counts II, III, IV, and V of the

---

[3] Although there is a factual dispute as to what counsel told Pedron, I find that an evidentiary hearing would not aid in the resolution of this issue, as counsel has already testified that he has no specific memory of whether he told Pedron to testify. (Robbins Decl. ¶ 4: "I don't have any specific recollection of this particular case whether I told the defendant that he had to testify.")

indictment.  As the Eleventh Circuit noted, the United States presented ample evidence to convict Pedron for each count, including transcripts of phone calls between Sleiman and Pedron discussing drug transactions, testimony from a DEA agent interpreting the calls and about the seizure of cocaine in Pedron's pocket and amphetamine pills in a briefcase in Pedron's car, which also contained Pedron's driver's license and Social Security card, and testimony from a forensic chemist linking the drugs Sleiman handed over to the DEA and the drugs later found on Pedron based on their appearance and purity level.  *See United States v. Pedron*, 284 F. App'x 598, 602 (11th Cir. 2008).  Of course, the jury also considered Pedron's own testimony as part of the substantive evidence in the case.  However, in light of all of the other abundant evidence to support the charges against him, Pedron has "failed to establish a reasonable probability that, but for counsel's failure to advise him of his right not to testify and that the decision rested solely with him, the result of the proceeding would have been different."  *See Cleckler v. United States*, No. 2:08-CV-397-WKW, 2009 WL 1507538, at *12 (M.D. Ala. May 29, 2009) (finding petitioner failed to establish counsel rendered ineffective assistance for failing to advise him of his right not to testify, given the overwhelming evidence of his guilt).

### D. Request for Evidentiary Hearing

Petitioner requests an evidentiary hearing in connection with his Motion to Vacate Sentence.  I find, however, that an evidentiary hearing is not necessary in this case because it would not add any new information to aid in the resolution of this case.  *See Ojeda v. Sec'y for Dep't of* Corrections, 279 F. App'x 953, 954 n.1 (11th Cir. 2008); *Lawrence v. McNeil*, No. 3:08-cv-69/SPM, 2010 WL 2890576, at *6 (N.D. Fla. Jul. 21, 2010).  Therefore, Pedron's request for an evidentiary hearing is denied.

## IV. CONCLUSION

For all the reasons set forth above, it is **ORDERED and ADJUDGED** that Jose Pedron's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 1) is **DENIED**. The Clerk is directed to **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in chambers at Miami, Florida, this 29th day of June 2012.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Counsel of record*